# James H. Bowen *et al.*

## *v.*

# Mary Bond *et al.*

1. Jurisdiction—*may be shown from recitals in decree.* The recitals in a decree or order are proper evidence to show jurisdiction, in a collateral proceeding.

2. Same—*sufficiency of recital to show.* Where an order for the sale of land by an administrator recited, "and now, on this day, came the petitioners, by Cheney, their attorney, and made proof of the service of notice according to the provisions of the statute in such case made and provided:" *Held,* that this was sufficient to show service of notice of the application, together with a copy of the account and petition as authorized by the Revised Statutes of 1845, and gave the court jurisdiction of the parties.

3. Administrator's sale—*jurisdiction depending on petition when the files are lost.* Where the entitling of an order of sale by an administrator shows there was a petition, this will be sufficient to give the court jurisdiction of the subject matter to order the sale, when the sale is attacked in a collateral proceeding.

4. In a proceeding, under the Revised Statutes of 1845, by an administrator, for the sale of land to pay debts, it is not essential to the jurisdiction of the court that the petition should show the lands of which the intestate died seized, if that fact otherwise appears upon the face of the record, as by recital in the order of sale.

5. Same—*order construed as to time of sale.* An order "that said petitioners be authorized and empowered to make sale of said land," etc., "and that they be required to make report to this court, at the next term thereof, of their doings in the premises:" *Held,* that, as the grant of power to sell was general, without restriction as to time, the clause requiring a report at the next term did not limit the exercise of the power within that time, but that the sale might be made after the next term.

6. So, where, at a succeeding term, an order was entered extending the time for making sale to the next term, it was urged that was a construction of the limited character of the original order, and limited the administrator to selling by the next term after the last order, but it was *held,* that such order was only formal, and in no way changed the original order of sale.

7. Same—*purchaser not affected because there were no debts at time of sale.* Although there may be no debts remaining unpaid at the time of the sale of land by an administrator, that will not render the sale void. A *bona fide* purchaser at such sale, without notice that there were no debts to be paid, will be protected in his purchase, if the court had jurisdiction of the subject matter and of the parties interested.

8. Purchaser—*notice of irregularity.* Where an administrator's sale of land ordered in 1848 was not made until 1852, and the record showed a continuance giving further time to sell, and various subsequent orders of continuance, it was *held,* that the lapse of time before selling, and such orders, were not sufficient to put the purchaser upon inquiry as to whether the debts had been paid from other means, before the sale to him.

Appeal from the Superior Court of Cook county; the Hon. T. D. Murphy, Judge, presiding.

Messrs. Sleeper & Whiton, and Mr. Geo. W. Smith, for the appellants.

Messrs. McDaid & Wilson, and Messrs. Lawrence, Campbell & Lawrence, for the appellees.

Mr. Justice Sheldon delivered the opinion of the Court:

This was a bill in equity, brought by James H. Bowen and others, the appellants, against Mary Bond and others, the appellees, to enjoin a certain suit in ejectment, and to quiet the title to the land in controversy, which is, the east half of the north-east quarter of section 31, township 37, range 15 east, in Cook county. A *pro forma* decree was entered in the court below, dismissing the bill. The complainants appealed.

Appellants claim title through mesne conveyances under an administrator's sale of the premises by the administrators of of Ezra Bond, deceased, for the payment of debts of his estate, made on July 20, 1852. Appellees are the heirs of Ezra Bond. The question arising is as to the validity of that sale.

The order of sale by the administrators was made by the circuit court of Ogle county, at its May term, 1848, in which county Ezra Bond died intestate, on October 13, 1847.

It is, first, objected that the order of sale is void, for want of jurisdiction in the circuit court over the heirs of Ezra Bond, and of the subject matter. The files and papers pertaining to the application for the sale are missing, and no papers whatever are to be found, the clerk of the circuit court of Ogle county testifying that the "wrapper" is in the proper place, but no files in it. The reliance, then, is upon the reci-

tals of the record to show the jurisdiction. That such recitals are proper evidence for that purpose, in a collateral proceeding, is the well settled doctrine of this court. *Reddick* v. *The State Bank*, 27 Ill. 145; *Moore* v. *Neil*, 39 id. 256; *Miller* v. *Handy*, 40 id. 448; *Donlin* v. *Hettinger*, 57 id. 348; *Hobson* v. *Ewan*, 62 id. 146.

The order of sale, which was made by the court at the May term, 1848, is entitled and recites as follows:

"In the matter of the petition of Lester H. Evarts and Mary Bond, administrators of the estate of Ezra Bond, deceased. Motion for leave to sell real estate.

"And now, at this day, came the said petitioners, by Cheney, their attorney, and made proof of the service of notice according to the provisions of the statute in such case made and provided; and it appearing to the court that the amount due to the several creditors of the said Ezra Bond is the sum of six hundred and nine dollars and twelve cents, which remains wholly unpaid; and it further appearing to the court that all the personal property belonging to the estate of the said Ezra Bond has been assigned and set over to the widow of said Bond, in part satisfaction of her allowance under the provisions of the Statute of Wills in such case made;

"And it also appearing to the court that an inventory and bill of appraisement has been filed in the court of probate in and for said county; and, also, that there was no sale of personal property belonging to said estate; and it also appearing to the court that said Bond died seized in fee simple of the east half of the north-east quarter of section 31, in township 38 north, range 15 east of the third principal meridian;

"And it appearing to the court that the value of said land would not be more than sufficient to pay all the debts and liabilities existing against said estate; it is therefore ordered," etc.

At the April term, 1850, there appears this order in the case:

"In the matter of the petition of Lester H. Evarts and Mary Bond, administrators of the estate of Ezra Bond, deceased. Petition for leave to sell real estate.

"It is ordered by the court that time of making sale by administrators be extended to next term."

And at the March term, 1853, an order of continuance is entitled as follows:

"In the matter of the petition of Lester H. Evarts and Mary Bond, administrators of the estate of Ezra Bond, deceased. Petition for leave to sell real estate."

It is insisted that the recital in the order of sale does not show jurisdiction of the persons of the heirs. The provision of the statute in respect of notice, in force at the time, was, "and it shall also be the duty of such administrator or executor to give at least thirty days' notice of the time and place of presenting such petition, by service of a written notice of the same, together with a copy of said account and petition, on each of the heirs, or their guardians, or devisees of said testator or intestate, or by publishing a notice, in the nearest newspaper, for three weeks successively, commencing at least six weeks," etc. Rev. Stat. 1845, p. 558, sec. 103. The objection taken to the sufficiency of the recital in this respect is, that the statute requires there should be service of a written notice, together with a copy of the petition and account; whereas, the recital was, in effect, that there was service of notice merely, saying nothing in regard to the service of a copy of the petition and account. We think this to be a greater strictness of construction than is required. The statute provides two modes of giving notice—one by service of a written notice, together with a copy of the account and petition; the other by publication of notice.

We regard it as the purpose of the recital in this case to show the giving of notice in the former mode; that saying proof was made "of the service of notice according to the provisions of the statute in such case made and provided," meant that notice had been given by the first mode pointed

out in the statute, to-wit: by service, instead of by publication of notice, and that the service had been in conformity with the requirement of the statute as to the first mode of notice, namely: by service of a written notice, together with a copy of the account and petition. We think this no more than a fair reading of the language of the recital, and that it should not be restricted to meaning that there was service of notice only, without a copy of the account and petition.

In *Moore* v. *Neil, supra,* the recital in the decree was "it appearing to the court that notice according to law was given of the pendency of this cause," and it was held that the recital cured the defect which there was in the certificate of publication, so as to make the certificate sufficient and give jurisdiction.

It is insisted that in order for the circuit court of Ogle county to have acquired jurisdiction of the subject matter, there should have been filed a petition containing the allegations required by the statute, viz: what lands the intestate died siezed of, and request the aid of the court in the premises, and that the records failed to show this. The above are all the statements that the statute requires to be made in the petition, as held in *Hobson* v. *Ewan,* 62 Ill. 151.

No petition, in fact, appears in the record, but we are of opinion that it does sufficiently appear from the entitling of the order of sale and other orders, as above set out, that a petition was filed for the sale of real estate. It is said that this court has decided such an entitling of an order in a cause to be no proof of the filing of a petition; that in *Monahon* v. *Vandyke, Admr.* 27 Ill. 154, where, in the case of an order of sale by administrators, there appeared in the record a similar entitling of the order of sale and another order, as in this case, it was held, that no evidence was found in the record that any petition was ever filed. But that case differed from this, in being a direct proceeding by writ of error to reverse the judgment. The question is different, where it comes up in a collateral proceeding like this. *Miller* v. *Handy,* 40 Ill. 448. In this last case, the judgment in a proceeding by *scire facias*

356            Bowen *et al.* v. Bond *et al.*            [Sept. T.

Opinion of the Court.

to foreclose a mortgage, recited the fact that two writs of *scire facias* had been returned "*nihil*," and it was held, that while the rule would be otherwise in a direct proceeding to reverse the judgment, yet, in a collateral proceeding, the stating of that fact in the record was, at least, *prima facie* evidence of its existence, to be rebutted only by the clearest proof, and that the mere absence from the files of one of the writs of *scire facias* would not rebut the presumption arising from the finding of the court. It was placed upon the principle, that a party who has purchased land under the judgment of a court of competent jurisdiction, *bona fide*, and with no notice of any such defects as the absence of a summons or notice, should not be put in jeopardy of his title, or be required to take the risk of the loss or abstraction of a loose paper from the files, when the decree or judgment of the court recites the fact that process was duly served, or the required notice duly given. It would be the same, of course, in the case of the absence of a petition.

The record, then, as we hold, showing there was a petition for the sale of real estate, the only remaining thing wanting is the statement in the petition, or otherwise, what lands the intestate died siezed of. The order of sale finds that the intestate died siezed of the land in question. We do not understand that it is essential to jurisdiction that the petition should contain the allegation of such fact, if it elsewhere appears upon the face of the record. In *Galena and Chicago Union Ry. Co.* v. *Pound*, 22 Ill. 414, a proceeding for the condemnation of land for the use of a railroad, this court said: "The judge before whom that proceeding was had, was exercising a special jurisdiction, conferred upon him by statute, and hence it was necessary to show that it was such a case as authorized him to act,— that the facts existed, or at least were alleged to exist, which gave him jurisdiction of the subject matter. It was sufficient, if those facts appeared in the averments of the petition, or in the order of the judge, or indeed in any part of the record."

It is necessary that it should appear there was jurisdiction

of the subject matter.   It appearing that there was a petition for the sale of real estate, the findings in the order of sale show fully that the court had jurisdiction over the subject matter.

We are of opinion, then, that the objection of the want of jurisdiction over the parties or the subject matter is not well taken.

It is next insisted that the license granted to the administrators to sell was limited as to time, and that the time limited had expired before the sale was made.

The order of sale was entered at the May term, 1848.   The sale took place July 20, 1852.

The concluding portion of the order of sale was:

"That said petitioners be authorized and empowered to make sale of said land aforesaid (the E. ½ of N. E. ¼, sec. 31, T. 37, R. 15 E., in Cook county), and that in making said sale they be required to follow the statute in such case made and provided, etc.; and that they be required to make report to this court at the next term thereof of their doings in the premises."

It is contended that the order of sale, in requiring the administrators to make report of their doings at the next term of the court, limited the exercise of the power granted by the order to them, within that time.   We do not so construe the language of the order of sale.

The grant of power to sell is general, without restriction as to time, and the provision as to making report at the next term, does not, as we conceive, have the force to impose any restriction, with respect to time, upon the power of sale.

At the April term, 1850, of the circuit court, there appears an order, that the time of making sale by the administrators be extended to the next term.   And at the next September term, 1850, it was ordered by the court, that the cause be continued for report; and at succeeding terms there were similar orders of continuance for report, until the March term, 1853, when the cause was continued for report, and that is the last order which appears in the case.

It is urged that this subsequent order extending the time of making sale by the administrators to the next term of court, should have effect as a construction placed by the court upon the character of the order of sale, viz: that it was limited in its character, and that the court, on April 2, 1850, in granting an extension of time to the administrators to make the sale, limited it by express words to a time certain—the next term. That order, as well as the subsequent orders of continuance for report, were probably but formal orders made upon the call of the docket, and we can attach to them no significance as in any way changing the order of sale of May term, 1848, or as limiting the time of making the sale. Under that order of sale, and unaffected by any subsequent action of the court, we are of opinion the administrators had authority to make the sale at the time they did, July 20, 1852.

The final objection to the sale is, that the power to make it was extinguished by the payment of the debts.

It appears, that in the interval between the order of sale in 1848 and the making of the sale July 20, 1852, the administrators applied to the county court of Ogle county, which had concurrent jurisdiction with the circuit court in such matter after the act of 1849, and on the 7th of August, 1850, obtained in the county court an order for the sale of certain specified land in Ogle and Winnebago counties, and that on December 20, 1850, they sold under that order of sale a lot in Rockford for $1000. It is claimed that the proceeds of that sale more than sufficed to pay all the debts of the estate.

This would appear probably to have been the case as to the debts which had been allowed and entered of record by the county court, as the order of sale of the county court finds the amount of such debts to be $517.68, with interest on them; and at a settlement in the county court, June 22, 1852, it appears that all allowed claims to that date were paid, and a balance of $8.57 left in the administrators' hands.

Yet, that does not appear to have been a final settlement, as on February 5, 1856, the administrators presented in the county court their account for settlement, when a balance was

found in their hands of $1.61, and it was ordered by the court that that be approved as a final settlement.

But, admitting that, at the time of the sale on July 20, 1852, there were no debts whatever remaining unpaid, we would not, for that reason, hold the sale to be void.

A like question arose in *Stow* v. *Kimball*, 28 Ill. 110, where there had been two sales, at different times, under an administrator's order of sale, and it was claimed that enough money had been raised by the first sale to pay all the debts, and that, consequently, the power of the administratrix was exhausted, there remaining no legal object for which the land could be sold. In answer to which this court said: "But conceding the utmost that is claimed, that enough money had been raised by the first sale of lands to pay all the debts, and we still think that the last sale was not void. The court had complete jurisdiction of the matter, and in the exercise of that jurisdiction it decreed that all of the lands mentioned in the petition, specifying and describing them particularly, should be sold to pay the debts of the estate. Surely, if here was jurisdiction in this court to make this decree, it furnished authority to the administratrix to make the sale."

And it was observed that it would be most prejudicial ir effect upon such sales, to hold that a purchaser at such a sale should go and see that in truth there were debts owing by the estate sufficient to require the sale of the particular land, at the peril of getting nothing by his purchase. The purchasers at the sale now in question, must be held to have been *bona fide* purchasers without notice. Nothing appears to affect them with notice in any way, as to the condition of the estate, whether there were debts remaining unpaid or not, or of any circumstance going to affect the validity of the sale. They were required to look to the order of sale to see whether it gave the authority to make the sale, and to see whether the court granting the order had jurisdiction of the subject matter, and of the persons of those interested in the land, and were not chargeable with notice of anything further.

Nor do we think, as is contended, that the lapse of time between the order of sale in 1848 and the making of the sale in 1852, and the several orders of the circuit court, (one of an extension of the time of sale to the next term, and the others of continuance for report from term to term,) establish a case that put the purchasers at the sale upon inquiry, so as to charge them with notice of any settlement of the estate or payment of the debts.

We are of opinion that the validity of the administrators' sale has not been successfully impeached, and the decree must be reversed and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*